v. Brizena. Mr. Carlson. Good morning, Your Honor. May it please the Court, my name is Hannah Garst, and along with Kent Carlson we represent Juan Briseno. Mr. Carlson will argue the RICO instruction and I'll be arguing the cumulative errors related to the prosecutorial misconduct during closing arguments. Although the jury did not impose the death penalty, Mr. Briseno still received a death sentence. He's currently serving five life sentences consecutive to one another. This highlights the effect that the government had when it made the errors during closing arguments. Cumulative errors when taken together can prejudice the defendant as much as a singular reversible error and violate the defendant's due process of law. Now the government committed three errors during closing arguments and many of these arguments were committed during the rebuttal. The government extensively argued two counts where the court had granted the motion for judgment of acquittal. The court had specifically stated there's insufficient evidence that the defendant in any way was in a joint venture with Lockhart. Let me ask you this, if we assume the government's statements regarding that earlier acquittal were wrong, erroneously made, could we still conclude that the error was harmless based on all the other evidence regarding his criminal activities? Your Honor, there was significant evidence in this case, but the problem that we are presenting is that these are some of the last statements that the jury heard. The jury, right before it goes into deliberation, is being told about the acquitted evidence. They are hearing the misstatement of the burden of proof on four other counts. The government is vouching for eight of its primary witnesses and these statements cover all of the Vicar counts, seven counts that he was ultimately convicted of. And due to the fact that there were so many errors right at the very last minute, we believe that there is a fair argument that although there was substantial evidence that these errors should not have happened, number one, and should be corrected with a new trial for Mr. Bruzzano. Now, aside from... Can you distinguish between vouching and just summarizing the evidence and giving the government's position? Your Honor, there is a difference between this because it is one thing for the government to use other witnesses as examples and corroborate the evidence. So, Billy and Joe said that this happened and Annie, well, she said the same thing, so therefore they're all telling the truth. This is very different, whereas the government is using evidence and facts that are not in the record to vouch for their own witnesses. For example, they say things like, if Almaraz was going to lie, he would have said something bigger and better to make his testimony better. Well, if that's the case, then the government is basically implying the witness is telling the truth. Now, the fact that... Well, what if the government just says, you know, what you could expect of someone in this position and so on. If he were lying, he'd say, you know, X, Y, Z. I think the problem... Why is that vouching if you're just trying to explain, you know, human nature or something? I think the problem is the implication that they're telling the truth, and that really is the determination of credibility is really left for the jury. And the problem is, well... Doesn't defense law counsel just say, you know, the government has said thus and so about the witness, but it's just conjecture. We don't know. The witness didn't testify to that, so you shouldn't pay attention to it. Well, the eight statements that we brought up in our brief were all made on rebuttal, so defense did not have an opportunity to correct these statements and to say... Well, did they ask the judge for an opportunity? Your Honor, unfortunately, they didn't. Trial counsel did not object in this case. And we believe that competent counsel would have objected, and so it must have been an oversight on counsel's part. Another example is the Garza testimony. Of course, we have to save that for another day, that incompetence issue. Correct, Your Honor. The Garza testimony where the government brings up a murder and says, well, if Garza was going to help himself, he would have pinned this other murder on Juan Brezano. Well, that murder wasn't even in play. Juan Brezano wasn't there. There was no evidence that he was connected to that. Again, they pulled it out to say, well, look at our witnesses. This is a witness case. There was no murder weapon. There is no DNA. There was no fingerprints. The government really relied on the witnesses to testify. And if the government believed that it had such a strong case, it wouldn't have needed to do this, especially at the end and commit these errors. Well, let's look at some of the non-challenged witnesses, like Torres. He testified that all the IGs knew about the marijuana and cocaine. And then on the Ortiz murder, there was video confirmation of Brezano's presence at the crime scene. Casings and bullet fragments matched the 9mm gun he had. On the Maes and Sessom murders, bullet casing and testimony, the Cologne murder, phone calls, the Howard murder, video of Brezano committing the murder and related phone calls. I would say that evidence is not significant. It might be overwhelming. Well, we maintain the position that the evidence is significant, but the significance of the actual witnesses testifying and stating that either Juan Brezano told them or they were with him at that time is also very significant. Your Honor, I would like to give my co-counsel time. Thank you. Thank you. Mr. Carlson? May it please the Court. I'm suggesting that the real reason we're here today, at least why I'm arguing today, is did the jury instruction dealing with racketeering conspiracy adequately provide the jury with a clear understanding of what it was they needed to decide and what it was they didn't need to decide? As I was preparing this case, one thing that surprised me early on is I was not the only person that was confused about the RICO conspiracy jury instructions. I noted that amongst other people, Judge Simon and his discussions with the lawyers in the jury instruction conference raised concerns about the confusing nature of the RICO conspiracy jury instructions, especially in light of the fact the government at that time was seeking a Pinkerton instruction as well. In doing so, he echoed this Court's concern in the Benabi case about the confusing nature of RICO conspiracy instructions as being challenging and confusing. As we set forth in our brief, I believe that the RICO jury instructions in this case, specifically instruction 29, is so confusing that a lay jury would not be able to understand the issues that they were required to decide and therefore not be able to make the required findings that they were required to make. To further confuse the matter, the jury was provided a jury instruction 34, which also dealt with the RICO instructions. And jury instruction 34, while it restates to some extent what was contained in paragraph 1 of jury instruction 29, they omit all of the matters contained in the fourth paragraph. So, but you have a big problem here because there was no objection. So we're talking about plain error here and I'm having trouble finding plain error on this two or more acts when it's a Seventh Circuit pattern instruction and there was no objection. Judge, we acknowledge that there was no obstruction here, no objection here. I would suggest to the Court that this Court generally construes waiver in favor of a defendant and I would ask that the Court do so here. And because there were 56 overt acts listed in the indictment, right? There were. And some of them included those murders where I referenced a certain testimony. That is correct. And what I would suggest to the Court is that the mere fact that those murders, which were the predicate acts that they were committed, the government itself concedes that those are separate and distinct acts. The five murders that they point out in their brief are separate and distinct crimes from the racketeering conspiracy alleged in count one. The elements of each of those are different. Specifically, the predicate acts in the counts that are involved, which are counts 19, I believe, 9, 13, 15, 19, and 21, don't require any kind of an agreement to commit to a predicate offense. It's merely committing the offense. They are separate and distinct offenses and the government acknowledges that in their brief. So merely to say that Mr. Breseno was found guilty of those offenses misses the point because they're not required to prove the agreement. And it's the agreement in the pattern instruction, and especially when taken into consideration with instruction number 34, which omits some of the same material in instruction 29, creates utter confusion for the jury to try to understand what it is they were required to decide and what they weren't required to decide. What did you mean when you said that waiver is construed in favor of the defendant? This Court has liberally construed waiver principles in favor of the defendant and indulges every presumption against waiver. The Court stated this in the Cooper case. What sense does that make? Well, I think what it's saying, Judge, is that the Court doesn't take waiver lightly, and I think what happened- I don't understand. The lawyer did not make objections. That's a waiver. I don't see what other construal is possible. Well, this Court has also suggested that when there is no strategic justification for not objecting, that the Courts have relaxed the waiver principles. I don't understand you. You mean you don't need a lawyer? It doesn't matter how incompetent the defense lawyer is? Does it make any difference? Well, Judge- You don't have to make objections. You don't have to do anything. Just sit there with your mouth shut. Judge, this was a situation in which- You really have an ineffective assistant claim. Isn't that what you're talking about? Well, Judge, that is one way of looking at it, but additionally, I believe that the question becomes can the government proffer some reason why the defense lawyer wouldn't object, and there is no reason why the lawyer wouldn't object. No competent criminal defense lawyer would not have objected to these jury instructions. Yes, so I'm saying you have an ineffective assistance claim. That's what you're talking about. But I think it's also- You don't acquit a person just because he has an incompetent lawyer. And Judge, we're not suggesting that it's grounds for acquittal. We're suggesting it's grounds for this Court to review, to find that this is forfeiture- Of course you're looking for an acquittal. In this argument, Judge, we're asking the Court to say that it is forfeiture rather than waiver, and that the Court can review this under the plain error standard, and that's what we're seeking here. The Court doesn't have any other questions. We'll save time for rebuttal. Thank you. Thank you, Mr. Carlson. Mr. Whelan? Good morning, Your Honors. May it please the Court, my name is Nathaniel Whelan. I'm here on behalf of the United States. Your Honors, Juan Bresenio committed five murders and was a key component in a large-scale RICO and drug conspiracy. After 15 days of trial, the jury convicted him on that conduct. Now on appeal, Mr. Bresenio challenges various statements made during closing arguments and one obstruction- excuse me, instruction, none of which were So best-case scenario for Mr. Bresenio, everything here is reviewed for plain error. So your view of this waiver forfeiture point that he makes is entirely different. Your Honor, we only raised waiver as to the jury instruction. We think that that's not reviewable by this Court because the defendant agreed the instructions were proper. We aren't asserting waiver as to any other statement made during closing argument. Those were forfeited. Mr. Bresenio has conceded that point and they are reviewable by this Court. I'd like to take a step back for a second and just affirm to the Court that the Department of Justice and our office takes any accusation of prosecutorial misconduct extremely seriously regardless of its merits. As we stated in our brief, we don't think there was any error in this case, but we have looked at this case extremely closely. We've gone through- multiple people reviewed this briefing in this case, and the trial attorney in particular has reviewed this. We will have training on closing arguments going forward. But with that being said, I think it's important to note where we are in this case, and that's that Mr. Bresenio did not object to a single statement or argument in the trial court that he's now objecting to. Defense counsel- I'm sorry, appellate counsel got up and said Mr. Bresenio didn't have an opportunity to correct any of these statements. That's not right. Mr. Bresenio had the opportunity to object down below in the district court, and he didn't. So where that leaves Mr. Bresenio now is he has to show any of these errors were so egregious that a seasoned judge like Chief Judge Simon should have stepped in and said, nope, this is wrong, it's impermissible, and rectified the situation. Even if he makes that showing, he then also has to show that these errors so infected the trial that the jury couldn't have rendered an impartial verdict. He hasn't made that showing. Unless this court has particular issues it'd like me to address, I was going to just run through quickly some of the arguments in the brief. I'd like to start with the Aranevus attempted murder. The district court did grant judgment of acquittal as to the substantive counts, and it found that Mr. Bresenio didn't aid and abet the murder. But the district court didn't strike any evidence related to that incident, and that's because Mr. Bresenio didn't move to strike all mention of that incident. Had he, I don't know what the court would have ruled, but I feel extremely confident the court would have said, no, it's admissible for the reasons we stated in our brief, namely that there's independent relevance for that particular incident. It showed Mr. Bresenio standing feet from the gun that was used a couple months later to kill Harris Brown. Mr. Bresenio was charged with that murder. It showed the practical reality of the rule that the imperial gangsters had, that if you testify against an imperial gangster, you should be killed. Mr. Aranevus had previously testified against imperial gangster, and Mr. Bresenio said at a party, we should kill him. It showed that Mr. Bresenio was in the gang, it showed the existence of hood guns, and it was an overt act charged in the indictment. There was more than independent relevance for this particular incident, and head defense counsel thought that any mention of the Aranevus murder should have been stricken. Presumably they would have gotten up and objected, or the district court would have said, no, this is out of bounds, you can't discuss it. Instead, defense counsel actually mentions the Aranevus murder in its closing argument and says the same gun used for the Aranevus attempted murder was also used for the Brown murder. Furthermore, we think the error, if there was an error, which we don't think there was, it was harmless. Those counts didn't go to the jury, they didn't get a verdict for them on counts 25 and 26. Defense counsel said, you don't have to consider this, those are off the table. Also, an attempted murder where we concede the defendant didn't say, shoot him, didn't pull the trigger, can hardly be prejudicial when compared to the five murders he was convicted of. Moving on, the next set of arguments that Mr. Bresenio challenges are what we call the story to set. To your point, Judge Posner, it is a reasonable inference to say the witnesses testified to X. If they were really looking to curry favor with the government, they would have testified to something much greater. Mr. Bresenio hasn't distinguished those cases, specifically Alexander and Clark and Tolliver. It makes sense. He hasn't challenged the factual statements of the government. He says you can't hypothesize that really if a witness were trying to lie or make their story better, they would have said something greater. I think that's a reasonable inference based on the record, and this court's found it's a reasonable inference based on facts. I did want to discuss the burden of proof shifting argument. We don't think that there was an error in this case. Defense counsel's theory of the case throughout had been, you have to find that these cooperators are lying. He admittedly doesn't say the word liar, but when the government objects and says you called them liars, he also doesn't say I didn't call them liars. He basically concedes that. At one point he says I'm not calling them a liar, but, which we all know is kind of code for I'm calling you a liar. That was the defense's best shot in this case, truthfully. As Judge Williams pointed out, there were a lot of eyewitnesses. There were a lot of individuals to whom Mr. Bresenio bragged. There were videos. There were ballistics. It was an extremely strong case based on some cold murders. Even if the government did err and maybe cross the line on the burden shifting, that error wouldn't have confused the jury as to that count, let alone any of the other counts. Judge Simon made clear that the burden remained on the government in his opening instructions. He made clear during the closing instructions, the jury took back those instructions that said the burden's on the government, and both counsel did reference that burden throughout. Did all those who testified get taken away from the possibility of life in prison? I'm sorry, can you repeat the question? Yeah, in exchange for testimony. Did they get something reduced where they weren't exposed to life in prison? Many of the witnesses were given plea agreements where the government, binding plea agreements where the government recommended a substantially reduced sentence. Some of the conspirators were facing life in prison and they were given 5K or 3553E motions, which allowed the district court to sentence them below the life sentence that they were otherwise facing. That testimony came out through trial in both cross and direct, and it was argued to the jurors throughout. Unless the court has any other questions on the arguments, I'd like to briefly address the jury instruction. First, Mr. Bresenio argues instruction 34 was vague today. He didn't raise that in his brief, and so we consider the issue vague. I'm sorry, waived, excuse me. But more importantly, Mr. Bresenio has not challenged that these instructions accurately state the law, and they do accurately state the law. As we noted in our brief, the defendant doesn't have to agree to commit specific predicate acts. He doesn't have to commit them themselves, and that's what the instruction says. The jury understood it, and even if there was some confusion, the jury did understand that Mr. Bresenio committed five predicate acts, namely the five murders. And it wasn't just that they had to find that he committed the murders. If you look at instruction 43, because these were murders in aid of racketeering, the jury had to find that the imperial gangsters were an enterprise, they were engaged in racketeering activity, that they affected interstate commerce, and that the defendant's purpose in committing the murder was to maintain or increase his position in the imperial gangster enterprise. The jury had to find that this was part of the enterprise, and that's what they did. We submit, even if Mr. Bresenio has shown that it was plain error to give the pattern jury instruction, it was harmless error. Unless the court has any further questions, we would ask that you affirm the sentence. I would just say you started your remarks by saying your office reviewed the closing argument, and we'll be looking at how closing arguments are given, and I just want to commend your office for doing that. Thank you, Your Honor. Your Honor, we too appreciate the government's statement that they reviewed the closing arguments and that they will have some training on that. However, we do maintain our position that the government was wrong in these closing arguments and they did commit error, and that it warrants a new trial, not an acquittal, but a new trial. And even if this court disagrees with us on that, we do respectfully request that this court does let the prosecution or the government know where the bounds are for closing arguments. There was very little, if any, case law on arguing after a motion for judgment of acquittal. The misstatement of the burden of proof is very clear of what exactly would have to happen for an acquittal to happen in this case. But again, you have a problem because counsel didn't ask that that evidence be stricken that related to that acquittal count, right? Your Honor, we have multiple problems with the lack of objections in this case. There's no secret to that. But like I said, we just ask that Your Honors let the prosecution know where those bounds are in closing arguments. Thank you, Your Honor. Okay, thank you very much, Ms. Garrison, Mr. Carlson, Mr. Whalen.